IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TONY SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF ATLANTA, GEORGIA, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:11-CV-765-TWT |

ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 4] and the Defendants' Amended Motion to Dismiss [Doc. 10]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Defendants' motions.

I. Background

The Plaintiff, Tony Smith, was a student at Grady High School in Atlanta, Georgia, on October 6, 2009. That morning Smith was near the school bus when money was stolen from a student's wallet. (Compl. ¶ 9.) Smith claims that he did not commit the theft but was merely a witness. (Id.) The Defendants claim that a witness identified Smith and another student as the perpetrators of the theft. (Defs.' Mot. to

Dismiss, at 2.) On the morning of October 7, 2009, Smith claims that he was handcuffed and forcibly removed from class by Atlanta Police Officers Larry Bennett and Charles Brown, Grady Assistant Principal Roosevelt Foreman, and other school administrators. (Compl. ¶ 11.) Smith claims that the officers placed him in a small room (Compl. ¶ 12) and handcuffed him to a file cabinet and chair for approximately seven hours. (Compl. ¶ 20.)

The Atlanta Citizens Review Board investigated the incident in response to Smith's request. The Board found that Defendants Brown and Bennett violated Atlanta Police Department Standard Operating Procedures by detaining Smith for an unreasonable amount of time, not transporting him themselves to the juvenile detention facility, and handcuffing Smith to a filing cabinet. (Compl., Ex. 3.) Defendant Turner, the head of the City of Atlanta Police Department, responded to the Board's letter by acknowledging violations due to holding Smith at the school for an unreasonable amount of time and handcuffing Smith to a filing cabinet. (Compl., Ex. 4.)

Smith filed the Complaint in this Court on March 11, 2001, against the City of Atlanta, the Atlanta Police Department, Police Chief George Turner (individually and in his official capacity), Officer Charles Brown (individually and in his official capacity), Officer Larry Bennett (individually and in his official capacity), Atlanta

Independent School System Superintendent Beverly Hall (officially), individual

members of the City of Atlanta Board of Education (officially), and Roosevelt

Foreman (individually and in his official capacity).  Smith alleges under 42 U.S.C. §

1983 violations of his Fourth and Fourteenth Amendment rights.  He also alleges

various violations of state law.  On June 29, 2011, all the Defendants except Officer

Bennett filed an Amended Motion to Dismiss [Doc. 10], and on September 6, 2011,

Officer Bennett moved to adopt the Defendants' Motion to Dismiss [Doc. 17].  Officer

Bennett's motion is hereby granted and he is now a party to the Defendants' Amended

Motion to Dismiss [Doc. 10].

## II.   Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion

to dismiss for failure to state a claim, however, even if it is "improbable" that a

plaintiff would be able to prove those facts; even if the possibility of recovery is

extremely "remote and unlikely."  Bell Atlantic v. Twombly, 550 U.S. 544, 556

(2007).  In ruling on a motion to dismiss, the court must accept the facts pleaded in

the complaint as true and construe them in the light most favorable to the plaintiff.

See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.

Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

### III.   Discussion

#### A.   Fourteenth Amendment Claims

The Plaintiff alleges violations of both his Fourth and Fourteenth Amendment rights. To the extent that the Plaintiff is attempting to state a substantive due process claim under the Fourteenth Amendment based on these facts, the due process clause does not provide a remedy for the Plaintiff.  The Supreme Court has expressed reluctance to expanding the concept of substantive due process.  The Court limits the concept traditionally to matters relating to marriage, family, procreation, and the right to bodily integrity.  Albright v. Oliver, 510 U.S. 266, 271-72 (1994).  Accordingly, the Supreme Court has held that the Due Process Clause does not provide relief when another constitutional provision provides an explicit textual source for protection of

a substantive right. Id. at 273-74; Graham v. Connor, 490 U.S. 386, 395 (1989). For instance, unlawful search and seizure claims fall squarely within the protections of the Fourth Amendment. Albright, 510 U.S. at 274; see also Dorsey v. Wallace, 134 F. Supp. 2d 1364, 1374 (N.D. Ga. 2000); Sims v. Glover, 84 F. Supp. 2d 1273, 1287-88 (M.D. Ala. 1999). The facts alleged in support of the Plaintiff's Fourteenth Amendment claims are simply reiterations of those asserted in support of the Fourth Amendment unreasonable seizure claims. The Plaintiff has not indicated how his due process rights are different from his Fourth Amendment rights in this context. Because the Fourth Amendment addresses the rights of individuals to be free from unlawful seizures, there is no basis for invoking the more generalized notion of due process. See Graham, 490 U.S. at 395. The Fourteenth Amendment claims are dismissed.

    B.    <u>Fourth Amendment Claims Against the City of Atlanta and the Atlanta Police Department</u>

Section 1983 provides a private cause of action for persons whose rights under the federal Constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). To establish a Section 1983 violation, plaintiffs must show (1) conduct committed by a person acting under color of state law (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United

States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); see also Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996).  Municipalities and other bodies of local government are "persons" within the meaning of Section 1983.  Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 690 (1978).

The Plaintiff seeks to hold the City of Atlanta and the Atlanta Police Department liable for the alleged constitutional violations committed by Officer Brown and Officer Bennett.  A plaintiff suing a local governmental entity under Section 1983 bears an additional burden to the normal Section 1983 requirements.  Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987).  To establish the liability of a city or county, the plaintiff must also show that the constitutional deprivation resulted from a custom, policy or practice of the municipality.  Id. (citing Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 694 (1978)).  Proof of a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under Monell.  Id.; see also Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985).

The Supreme Court and the Eleventh Circuit have strictly limited municipal and county liability under Section 1983.  Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998).  A municipality or county is not liable through *respondeat superior* for the

wrongful acts of its employees. Id. at 1350 (citing Monell, 436 U.S. at 691). Thus, plaintiffs asserting municipal or county liability under Section 1983 must show that the government's "official policy" caused the unconstitutional actions of its employee. Gold, 151 F.3d at 1350. To do this, plaintiffs must "identify a municipal 'policy' or 'custom' that caused [their] injury." Id. (citing Bryan County Com'rs. v. Brown, 520 U.S. 397 (1997)). "It is only when the 'execution of the government's policy or custom...inflicts the injury' that the municipality may be held liable under § 1983." Id. (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

It is implausible that Atlanta Police Department policy sanctioned the seven hour detention, failure to transport the Plaintiff to the juvenile detention facility, or the handcuffing of the Plaintiff to a filing cabinet. In fact, exhibits to the Plaintiff's own Complaint clearly state that these actions violated Atlanta Police Department policy. (Compl., Exs. 3-4.) The City of Atlanta and Atlanta Police Department are thus dismissed as Defendants in this case.

C.   Official Capacity Claims

The Court notes that the Plaintiff asserts his 42 U.S.C. § 1983 claims and his state law claims against Turner, Brown, Bennett, and Foreman in both their official and individual capacities. However, a claim against a public official in his official capacity is considered a claim against the governmental entity that the official

represents. Hafer v. Melo, 502 U.S. 21, 25 (1991); Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1210 n.3 (11th Cir. 1993). Thus, the claims against the City of Atlanta and the official capacity claims against Turner, Brown, Bennett, Hall, individual members of the City of Atlanta Board of Education, and Foreman are redundant. Accordingly, the Court dismisses the claims against these Defendants in their official capacities. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (affirming district court's dismissal of claims against defendants in their official capacity because to keep both City and officers would have been redundant and possibly confusing to jury); Gray v. City of Eufaula, 31 F. Supp. 2d 957, 965 (M.D. Ala. 1998) (official capacity claim dismissed because suit against both the City and defendant in his official capacity was redundant).

D.  Individual Capacity Claims

The Plaintiff claims that Defendants Turner, Brown, Bennett, and Foreman violated his constitutional rights giving rise to liability under 42 U.S.C. § 1983. He has brought suit against these Defendants in their individual capacities. As previously discussed, to establish a Section 1983 violation, the Plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived him of rights, privilege, or immunities secured by the Constitution or laws of the United States. Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996). The Plaintiff alleges a

deprivation of his right to be free from unreasonable seizures guaranteed by the Fourth Amendment.

The Plaintiff does not allege that Defendants Turner and Foreman committed any constitutional violations in their individual capacities. The factual allegations do not include any mention of Turner, who was not present during the incident. The only mention of Foreman is that he contacted the Plaintiff's mother and stated "Your son messed with the wrong guy" and that Officers Brown and Bennett were "out to get him." (Compl. ¶ 21.) While certainly regrettable if true, Foreman's actions do not rise to the level of a constitutional violation. The Court need not consider whether or not these facts would properly serve as the basis for a tort claim because the alleged victim, the Plaintiff's mother, is not a party to this lawsuit.

Turner, like the City of Atlanta and the Atlanta Police Department, cannot be held liable for the unconstitutional acts of his subordinates on the basis of *respondeat superior*. Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). Supervisory liability can be established in two ways: (1) the supervisory official personally participated in the alleged constitutional violation; or (2) there is a causal connection between the actions of the supervisory official and the alleged constitutional deprivation. Id. Because Turner was not present at the incident in question, the Plaintiff must satisfy the "extremely rigorous" standard required to impose supervisory liability on

individuals who were not present at the time of the alleged constitutional violation. Braddy v. Florida Dep't of Labor & Employment, 133 F.3d 797, 802 (11th Cir. 1998). Under this standard, the necessary causal connection may be established if: (1) the supervisory official fails to correct an alleged constitutional deprivation in the face of a history of widespread abuse that would put a responsible supervisor on notice of the need to correct the alleged deprivation; (2) the supervisory official's custom or policy results in deliberate indifference to constitutional rights; or (3) the facts support an inference that the supervisory official directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. Miller, 384 F.3d at 1261; Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003).

The Plaintiff has not plead any facts showing a widespread history of this type of abuse and the Court already established that there is no policy or custom supporting the alleged constitutional violations. The Plaintiff also does not plead that Turner directed or knew of the alleged constitutional violations beyond speculation that is lacking in evidentiary support and plausibility. Defendants Turner and Foreman are dismissed from this lawsuit.

Defendants Brown and Bennett directly participated in the incident in question. Seeking to have the claims dismissed against them nonetheless, they argue that

qualified immunity shields them from all liability in their individual capacities. Qualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988), the Eleventh Circuit adopted a two part analysis for assessing the qualified immunity defense. First, the defendant public official must prove that he acted within the scope of his discretionary authority when the challenged conduct occurred. If the defendant satisfies this part, the burden shifts to the plaintiff to show that the defendant public official's conduct violated clearly established law. Id. at 1563-64. In general, the Eleventh Circuit allows a broad and expansive scope of protection afforded by qualified immunity:

> That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against

> claims made against them in their individual capacities. . . Unless a government agent's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.

Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (citations and footnotes omitted). In Lassiter, the Eleventh Circuit expounded that for a law to be clearly established in the qualified immunity context, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." Id. at 1150 (emphasis in original). The Court will interpret the present case in light of the Eleventh Circuit's clear mandate of affording government agents broad protection for their discretionary acts.

The Defendants have clearly established the first prong of the test for qualified immunity. A government official can prove he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich, 841 F.2d at 1564; Barker v. Norman, 651

F.2d 1107, 1121 (5th Cir. 1981).[1]  The Plaintiff does not contest that the officers carried out the seizure in the performance of their normal job duties and that the seizure was within their authority as police officers for the City of Atlanta. Accordingly, it can only be concluded that they were acting within the scope of their discretionary authority when the seizure occurred.

Now that the Defendants have shown that their actions were carried out in performance of their discretionary duties, the burden shifts to the Plaintiff to show that the Defendants' actions violated established constitutional law that existed at the time the challenged actions transpired.  As this Court reads the factual allegations stated in the Complaint, the Plaintiff has alleged two colorable constitutional violations from his detention–excessive force and an unreasonably long detention.  The Court discusses the application of qualified immunity to each alleged violation of the prohibition against unreasonable seizures in turn.

The excessive force standard is based on reasonableness.  It looks to the need for force, the amount of force used, and the injury inflicted. Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997).  In Post v. City of Ft. Lauderdale, 7 F.3d 1552

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11 th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

(11th Cir. 1993), the Eleventh Circuit held that because the reasonableness standard establishes no bright line, an officer is entitled to qualified immunity from an excessive force claim "unless application of the standard would inevitably lead every reasonable officer in [the officer's] position to conclude the force was unlawful." Id. at 1559. Under this standard, the Plaintiff has not met his burden of showing the Defendants acted with excessive force.

A minimum amount of force and injury will not defeat an officer's qualified immunity in an excessive force claim. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). In Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997), the Eleventh Circuit held that a reasonable officer would not inevitably conclude that force was unlawful when an officer slammed the suspect up against a wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants, causing the suspect to experience pain and necessitating minor medical treatment for knee pain. Jones, 121 F.3d at 1460. In this case, neither the fact that the handcuffs were too tight for a period of time (before they were loosened on request), nor that Smith was handcuffed to a filing cabinet rather than some immovable object, would cause a reasonable officer to inevitably conclude that the force used against Plaintiff Smith was unlawful. Post, 7 F.3d at 1559.

The Court now considers whether it can dismiss the alleged constitutional violation for an unreasonably long detention on this motion. It cannot. The Defendants maintain that they had arguable probable cause to arrest or detain, but "it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out." Tennessee v. Garner, 471 U.S. 1, 8 (1985). "The reasonableness of the length of detention is a case-by-case evaluation, and the government must provide 'an explanation for the length of the plaintiffs' detentions.'" Shelby Indus. Park, Inc. v. City of Shelbyville, No. 1:06-CV-1150DFH, 2008 WL 2018185, at *12 (S.D. Ind. May 9, 2008) (quoting Chortek v. City of Milwaukee, 356 F.3d 740, 746-48 (7th Cir. 2004)). The Court does not have sufficient evidence before it to consider whether the length of detention, which is alleged to be seven hours, was reasonable. Therefore, the Court cannot grant Officers Brown and Bennett qualified immunity for the allegedly unreasonable length of the Plaintiff's detention at this time.

E.   State Law Claims

The Plaintiff alleges that the Defendants' actions violated his rights under the Georgia Constitution and various state laws. The Defendants move to dismiss these claims based on sovereign immunity. The Georgia Constitution sets forth the doctrine of sovereign immunity. Ga. Const. art. I, 2, ¶ IX. Pursuant to this constitutional provision, cities and counties are absolutely immune from suit for tort liability, unless

that immunity has been specifically waived by "an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Gilbert v. Richardson, 264 Ga. 744, 747 (1994); see also O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). The Plaintiff does not allege any statute that specifically waives sovereign immunity in this case, nor does he allege that the City has done anything to waive immunity. Thus, the state law tort claims against the City are barred by sovereign immunity.

Sovereign immunity also bars claims against officials in their official capacity, Cameron v. Lang, 274 Ga. 122, 126 (2001), and in their individual capacity, pursuant to the doctrine of official immunity. Gilbert, 264 Ga. at 750. Official immunity precludes hindsight review of an official's judgment and allows public employees to retain independence of action without fear of becoming personally liable. Gilbert, 264 Ga. at 750. A public officer may be personally liable for negligently performing ministerial acts. However, under the doctrine of official immunity, an official is immune from liability for discretionary acts performed within the scope of his official authority if the actions are done without wilfulness, malice, or corruption. Cameron v. Lang, 274 Ga. 122, 123 (2001).

Actual malice, in the context of official immunity, is equated with "express malice or malice in fact" and requires a showing of "deliberate intention to do wrong." Adams v. Hazelwood, 271 Ga. 414, 414-15 (1999); Merrow v. Hawkins, 266 Ga. 390, 391 (1996). Mere proof of ill will, anger, frustration, or irritation is insufficient to establish actual malice. Adams, 271 Ga. at 415; Woodward v. Gray, 241 Ga. App. 847, 851 (2000). Rather, the plaintiff must show that the public officer acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm the plaintiff. Anderson v. Cobb, 258 Ga. App. 159, 160 (2002) (citing Adams, 271 Ga. at 415); see Kidd v. Coates, 271 Ga. 33, 33-34 (1999) (defining "actual intent to cause injury" as "an actual intent to cause harm to the plaintiff" encompasses concept of wilfulness, malice, or corruption in the context of official immunity). The Complaint is devoid of any allegation that the Defendants acted with actual malice towards the Plaintiff, nor would such a claim be plausible. Thus, the state law claims against all Defendants are dismissed.

Finally, the criminal charges that the Plaintiff alleges against Officers Brown and Bennett–violations of O.C.G.A. § 16-5-41 (false imprisonment), O.C.G.A. § 16-5-42 (false imprisonment under color of legal process) and O.C.G.A. § 16-5-23 (simple battery)–are not a basis for civil liability. The Defendants' motion should be granted as to these claims.

IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss [Doc. 4] and the Defendants' Amended Motion to Dismiss [Doc. 10].

SO ORDERED, this 27 day of September, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge